ERASTUS PORTER, Defendant in Error, *v.* THE NORTH MISSOURI RAILROAD COMPANY, Plaintiff in Error.

*Nuisance—Highway.*—The use by a railroad, under authority of its charter, of a street in its ordinary use as a means of travel and transportation, is not a perversion of the highway from its original purposes. Any damage to the property abutting on the street, resulting from such obstruction, is *damnum absque injuria.*

*Damage, mitigation.*—In an action for damage to the property of plaintiff by obstructing the public highway by the construction and use of a railroad, the defendant may show, in mitigation of damages, that the work done by him in grading, &c., enhanced the value of the plaintiff's property.

*Error to St. Charles Circuit Court.*

This cause is brought here on a writ of error from a judgment of the Circuit Court of St. Charles county, on an action to recover damages against defendant for using the street in front of plaintiff's lot in the town of St. Charles as a railroad track.

Plaintiff in his petition stated that he was owner of the lot; that he had a large brick dwelling-house and other improvements on said lot; defendant constructed its railroad track along Main street in front of plaintiff's lot to use the same, whereby the street was greatly obstructed; that prior to said construction of defendant said street was a public highway in said city; that by reason of acts of defendant the property of plaintiff has been greatly lessened in value, and he put to great trouble and inconvenience in going to and returning from his said house and lot, to his damage in the sum of one thousand dollars.

The defendant sets up as a defence: " The city of St. Charles was incorporated, authorized 'to open, alter, abolish, widen, extend, establish, grade, pave, or otherwise improve and keep in repair streets, alleys, avenues, lanes, drains and sewers within said city, and to do and perform all other acts and things pertaining to the streets of said city,' &c. That by an act of said city they granted to defendant the right of way along said Main street, in consid-

eration that defendant would macadamize Second street from Decatur to Clark street, and down Clark street to Main street; and also build a sewer from Second street along Lewis street to the Missouri river, and fill up that part of Second street through which Larobe Branch then ran; that defendant performed said work accordingly, and laid said track in accordance with said permission and not otherwise, and plaintiff is not damaged; that defendant macadamized Second street, which runs along the entire western boundary of plaintiff's lot."

The court refused evidence offered to show that improvements made by defendant enhanced the value of the property.

Plaintiff then offered the following instructions, which were granted, and excepted to by the defendant:

1. That if they (the jury) believe from the evidence that the property of the plaintiff has been injured in value by reason of the acts of defendant laying the track of the road as it was laid, and by running cars upon the track and leaving them standing upon the track in front of his dwelling-house, or otherwise obstructing the street in front of his property, or that plaintiff was put to trouble and inconvenience or annoyance by the acts of the defendant aforesaid, they must find for the plaintiff such damage as the evidence shows the plaintiff has sustained.

2. In estimating the damage sustained by plaintiff on account of the acts of defendant aforesaid, the jury is not authorized to set off against such damages the advantages to the plaintiff in the improved value of his property consequent upon the building of the railroad which are common to the owners of other property in the vicinity of the road.

3. If the jury believe that the plaintiff has sustained damages by reason of the acts of the defendant as set out in the foregoing instructions, then the permission of the city council of St. Charles to defendant to lay the track of the road along Main street will of itself constitute no defence for the injury done by the defendant.

The defendant then offered the following instructions, of

which the court gave the second, third and fourth, and refused the first and fifth:

1. If the jury find from the evidence that the city council of the city of St. Charles granted the right of way to defendant to run the North Missouri railroad along Main street in said city, and they further find that said defendant, in laying their track along said street and in running their cars over said track, committed the grievances complained of, and that in so doing the defendant did no injury to the plaintiff or his property, other than that which necessarily resulted from a prudent, careful and proper use of said grant of said right of way, then there should be a verdict for the defendant.

2. The record of the city council, given in evidence by the defendant, (if true and genuine,) is sufficient to show the grant of the right of way from said city council to said company.

3. The plaintiff cannot recover damages for injury done to his property by the acts of the defendant unless the property was by said acts lessened in value.

4. No damages of any kind can be recovered by plaintiff for any act done by defendant since the commencement of this suit. No damages can be recovered for permanent injury to said property, only for such as accrued before the suit commenced.

5. In estimating the damages, if any, sustained by plaintiff, the jury will take into consideration all the circumstances and all the necessary and direct results of the acts of defendant which are complained of by plaintiff and proven to the satisfaction of the jury; and unless it appears, upon such a review of all the facts, that the property of the plaintiff has decreased in value in consequence thereof, then the plaintiff is not entitled to recover anything having reference to the value of the said property.

The case was submitted to the jury, and they found a verdict for the plaintiff for the sum of $664.

Defendant then filed his motion for a new trial and in arrest of judgment; both overruled, and the cause brought up by writ of error.

*Holmes, Wickham & Lewis,* for plaintiff in error.

I. The ordinary use of a public street by a railroad merely for the passage of trains, whether driven by horse power or by steam power, without any other obstructions or permanent erections than the track built thereon, and not materially impairing the private right of way of the owner of an adjoining lot, whether his ownership of the ground extends to the centre line of the street or not, does not entitle such owner to compensation as for private property taken for public use. (Pierce's Law of Railw. 178, 184; Ang. on Highw. § 242, 247; Lackland v. N. M. R.R. 31 Mo. 181; *Quere*, as to horse railroads—Brooklyn Co. R. Co. v. Brooklyn City R. Co. 33 Barb. 420; Same v. Coney Island R. Co. 35 Barb. 364–8.)

To the contrary, Redfield on Railw., 2 ed., § 76 and note 1, cites Williams v. Nat. Br. Plk. R. Co., 21 Mo. 580, and Williamson v. N. Y. Central R. Co., 16 N. Y. 97; but in these cases there were obstructions materially impairing the private right of way—in the latter case amounting almost to an exclusive occupation of the street.

II. The Legislature had the power to grant and did grant to the appellant the privilege of laying its railroad track on the street in front of appellee's lot. (Sec 11, Act to incorporate N. M. R.R. Co., Session Acts of 1851, p. 486; *in re*, Phila. & Trenton R.R. Co. 6 Whart, 45; Commonwealth v. Erie & N. E. R.R. Co. 27 Pa. Rep. 354; Newburyport Turnpike Co. v. Eastern R.R. 23 Pick. 328; Drake v. Hudson River R.R. Co. 7 Barb. 547; Corey v. Buffalo, C. & N. Y. R.R. 23 Barb. 489; Hatch v. Vt. Central R.R. 25 Vt. 60–61; Richardson v. Vt. Central R.R. 25 Vt. 425.)

III. The appellant is not liable as for a tort for acts for which she is authorized by law to do, and whilst in the reasonable exercise of her rights and conducting her lawful business without malice, negligence or unskilfulness, she is not responsible for any damage which may be occasioned to others thereby. (Callender v. Marsh, 1 Pick. 425; Taylor v. St. Louis, 14 Mo. 22; Radcliff v. Mayor of Brooklyn, 4 Comst.

203; Hatch v. Vt. & Central R.R. 25 Vt. 65; Whittier v. Portland & K. R.R. 38 Me. 29.)

IV. The appellant's charter does not require damages to be paid for lands which are injuriously affected by the construction of the road, and therefore she is not liable for consequential damages to lands not taken for the railroad. (Hatch v. Vt. Central R.R. 25 Vt. 60; Corey v. Buffalo, C. & N. Y. R.R. 23 Barb. 489; Gould v. Hudson River R.R. 2 Selden, 535; Whittier v. Portland & K. R.R. 38 Me. 29.)

V. The city of St. Charles having the power to alter and abolish streets, &c., under her charter, granted the appellant the right of way through Main street in front of appellant's lot; and if any one is liable to him for damages arising from the use of the street complained of, it is the city of St. Charles, for she is expressly declared by her charter to be liable to individuals for all damages arising from alterations or improvement in streets by virtue of the powers conferred on her. (Art. 6, § 2 of city charter; Sargent v. O. & M. R.R. 1 Handy, 61–62; Hatch v. Vt. Central R.R. 25 Vt. 60.)

VI. The appellee is not the owner of the soil to the middle of the street; but his lot is *ager limitatus*, and is confined to the limits of his grant, which is bounded by Main street; and if appellant has constructed her road along said street under proper legal authority, and appellee has suffered damage in consequence of its proper construction, it is *damnum absque injuria*. The first instruction asked by defendant was therefore improperly refused. (*In re*, Phila. & Trenton R.R. 6 Whart. 44; Commonwealth v. Erie & N. E. R.R. 27 Pa. 354; Radcliff v. Mayor of Brooklyn, 4 Comst. 205; Corey v. Buffalo, &c., R.R. 23 Barb. 489.)

Whether the soil of the street belongs to the adjacent lot owners or to the public is a fact to be determined by the circumstances of each case. In the case of county roads, it is the presumption of law that it does belong to them, (Williams v. N. B. Plank Road, 21 Mo. 582,) but streets in a city stand on different considerations. The appellee bounds his lot by Main street of St. Charles, an old Spanish and French vil-

lage, and must therefore be confined to the limits of his grant, and the soil of the street will not be presumed to be his in the absence of proof to that effect. (Smith v. The City of St. Louis, 21 Mo. 42; see also Smith et al. v. Public Schools, not reported.)

VII. The city of St. Charles, by virtue of its ordinary power to regulate the use of streets, had a right to grant the appellant the privilege of laying its railroad on Main street, and of using same, provided it be so constructed and used as not to be incompatible with the use thereof by other usual modes of conveyance and passage, and this, too, although it may to a certain extent interrupt the free passage of other kinds of vehicles. The first instruction given for appellee, therefore, is erroneous. (Drake v. Hudson River R.R. 7 Barb. 547; Anderson et al. v. Rochester L. & N. R.R. 9 How. 553 & 559; Applegate v. Lexington & O. R. R.R. 8 Dana, 289; Wolfe v. Cov. & Lex. R.R. 15 B. Monroe, 409; Sargent v. O. & Miss. R.R. 1 Handy, 60; Whittier v. Portland & K. R.R. 38 Me. 29.)

VIII. The appellant's fifth instruction should have been given; for if it should be held that appellee owned to the middle of the street by appellant's charter, in assessing damages to land over which the road passes, the advantages are required to be set off against the damages. (See 9 Art. to incorporate N. M. R.R. 485, Acts 1851; Simonds v. Cincinnati, 14 Ohio, 174; Hatch v. Vt. Central R.R. 25 Vt. 66.)

*Sharp & Broadhead*, for defendant in error.

I. The first question presented in the case is as to whether the city council of St. Charles could, without the consent of the owners of adjoining lots, and without any compensation to them, grant to the railroad company the right to construct the track of a railroad along Main street so as to totally or almost entirely obstruct the street and render it useless as a highway.

This proposition is embraced in the first instruction asked by defendant and refused by the court.

It is averred and not denied that Main street had been dedicated to public uses, and used as a public highway for more than twenty years next before the grant of the right of way to the railroad company.

Through this street the defendant claims the right of constructing such a road as the evidence shows was constructed, to be used as the evidence shows it was used, under an ordinance of the city council of St. Charles.

The grant is broad enough; there is no limit as to width, but embraces the whole street.

It is not pretended that this is a condemnation under the charter of the railroad company, but a voluntary relinquishment under the 8th section of the act incorporating the company. (See Sess. Acts, 1851, p. 485.)

It is contended that the city council, under its general powers to regulate, alter, &c., streets and alleys, has this power.

The first difficulty in the way arises under the charter of the railroad company, which is a law of the land controlling the city council, the railroad company, and every one else. The 11th section of the charter (see Sess. Acts of 1851, p. 486) provides that the company may build said road along or across any State or county road, or street or wharves of any town or city; but said road shall not be so constructed as to prevent the public from using any road, street or highway along or across which it may pass. This is in effect a legislative reservation for the benefit of the public, which the city council of St. Charles cannot impair unless they have higher authority than the Legislature. But further: as to the nature of this grant, it is a contract with the railroad company, whereby, for the consideration of making certain improvements on another street, the right of way is granted without limitation or restriction as to time.

In other words, it is a grant of the whole street to a private corporation, to the entire exclusion of the public, and the power of the city council over an important thoroughfare has ceased to exist. Now this is not only in violation of the act

of the Legislature, by which the North Missouri Railroad Company was chartered, as quoted above, but it comes in conflict with a well recognized principle of law, to wit, that a municipal corporation cannot by contract, or by any other act, abrogate or abridge its own legislative and discretionary power. (6 Wheat. 593; 5 Cow. 538; 3 Duer, 131–149.)

In the case last cited of the State of New York v. The Mayor and Aldermen of the City of New York, this point was expressly decided upon the grounds above stated, and for the further reason that the grant was exclusive in its nature; that by the legal import of its terms it may be perpetual; that it granted a franchise which the common council had no authority to grant and was therefore utterly void.

This grant by the city council being the authority and only authority claimed by the defendant for the grievances complained of, the defence must fall to the ground.

II. As has been shown, the Legislature, in granting the power to the railroad company to construct the road along a street or public highway, did not intend that the public should be deprived of the use of the street—the right of the public so to use it being reserved; but further than this could not be done either by the Legislature or the city council; for the law presumes the fee of the land in the site of the street to be in the land owners on each side, *usque ad filum viæ*, to the middle of the street, and the corporation must produce its title if it has any (see 19 Wend. 659, 675); and the land which is the site of the street cannot be taken for the purpose of establishing a railroad without compensation to the owners of the soil, and they may have the action of trespass for a violation of the right. (See Trustees of the Presbyt. Society in Waterloo v. the Auburn & Rochester R.R. Co. 3 Hill, 567; also Fletcher v. Auburn & Syracuse R.R. 25 Wend. 462.)

This last case has been supposed to have been overruled by the case of Chapman v. Albany and Schenectaday Railroad Company (10 Barb. 366); but in this case it is admitted that although the company may occupy the road, they must oc-

cupy it at their peril, and so as not to prejudice private rights; but the case cited in 3 Duer, 119, is of still later authority, and holds a different doctrine. Besides, our own Supreme Court, in the case of Williams v. Natural Bridge Plank Road Company, (21 Mo. 580,) seems expressly to recognize the doctrine laid down in 3 Hill, 567, and 25 Wend. 462.

But it is contended that in the case of Williams (21 Mo. 580) it was shown that the owner of the adjoining land owned the land over which the plank road was located. So in this case, where the street had been used for twenty years, and no evidence appearing to the contrary, the presumption is that the land occupied by the street was the property of the adjoining proprietor, the public only having the right of way over it for a street. (See 19 Wend. 675 ; 3 Kent's Com. 432–433, and cases cited.)

It is admitted that authorities may be cited against this position, but the weight of reason and authority is in favor of the right of the owner of the adjoining land to sue for damages resulting from the construction of a railroad along a street, when there has been no compensation.

III. As to the question of damages, the rule laid down by the court is the correct one, and there was no error in giving the instructions asked by the plaintiff and refusing those asked by the defendant on this point.

The same rule has been laid down by this court in cases of condemnation of the property, to wit, that the "advantages" to be taken into consideration in determining the just compensation to which the land owner is entitled are the direct and peculiar benefits or advantages accruing to him in particular in respect of the residue of his land unappropriated, and not any general benefit or increase of value received by such land in common with other lands in the neighborhood. (See Newby v. Platte County, 25 Mo. 258 ; Louisiana & Frankfort R.R. Co. v. Pickett, 25 Mo. 535.)

This would be the rule in case of condemnation, and if any advantages to the plaintiff at all can be taken into consideration in determining the question of actual damage, it would

seem that this would be a fair and just mode of estimating the amount of such damage.

BATES, Judge, delivered the opinion of the court.

The principal question which arises in this case is one of great difficulty, concerning which there is much diversity of opinion. It may be stated as follows:

Is the use of a street or other public highway for the purposes of a railroad an authorized and legitimate mode of enjoying the public easement?

The charter of the North Missouri Railroad Company authorized it to build the road " along or across any State or county road, or street, or wharves of any town or city;" " and said railroad shall not he so constructed as to prevent the public from using any road, street or highway along or across which it may pass."

The company for a valuable consideration purchased from the city of St. Charles the right of way along a street of the city, and located its road there, passing in its course along in front of a lot of the plaintiff, and used the same in running cars, &c.; and the plaintiff, in his petition, avers that thereby the street was greatly obstructed, whereby the property of said plaintiff was greatly lessened in value, and by reason of which he has been and is put to great trouble and inconvenience in going from and returning to his house.

The case of Lackland v. the North Missouri Railroad Company (31 Mo. 181) was decided upon the ground that the city of St. Charles did not and could not authorize the entire conversion of the street, by permanent structures of various kinds, to such uses as virtually blocked it up for all the purposes of the street.

This case is materially different. The ground of complaint here is, that by the construction and use of the railroad the street was *greatly obstructed*, and from the evidence it appears that the street is to some extent obstructed by its use by the railroad company, but that the obstruction does not prevent the public from using the street, except upon that part of it

on which the track is laid when in actual use by the defendant, and that the plaintiff's access to his lot is not affected.

Upon deliberation, we think that the use of the street for purposes of a railroad, in its ordinary use as a means of travel and transportation, is not a perversion of the highway from its original purposes, and was authorized by the General Assembly in the charter of the defendant. The damage to the plaintiff's property resulting from such obstruction was *damnum absque injuria*.

In other courts there is some conflict of decision upon this question. We refer to the cases cited in the briefs of counsel and to those cited in Pierce on American Railroad Law, and Redfield on Railways.

We think it best to remand this case, and therefore give our views upon another question which may arise again if the case should be tried again. When this case was tried, it appeared that the defendant, in consideration of the grant of the right of way through the street by the city of St. Charles, did certain work in the improvement of adjacent streets in filling, grading and paving them, and building a sewer; and the defendant offered, as diminution of any damages sustained by the property of the plaintiff, to prove that the work so done enhanced the value of plaintiff's property. This evidence was rejected, as we think, improperly. It was a special benefit to the plaintiff, conferred by the defendant in payment for the very thing which caused damage to the plaintiff, and certainly was proper to be considered in reduction of that damage.

Reversed and remanded; Judges Bay and Dryden concur.