INGRAM, KENNEDY & DAY v. THE C. D. & M. R. R Co.

1. **Practice**: INSTRUCTIONS. In an action against a railroad company for damages for injury to private property by the construction of its road upon a public street, it was held to be error to instruct the jury to determine whether the company had constructed more tracks or upon different lines than were authorized by the city ordinances. The number of tracks thus authorized was a question of law, respecting which the court should have determined the legal rights of the parties.

2. ———: ———. An instruction based upon a hypothesis unsupported by evidence, is erroneous.

3. **Action**: RIGHT OF INDIVIDUAL TO MAINTAIN FOR PUBLIC INJURY. To enable an individual to maintain an action for damages upon a cause of action wherein the public are interested, he must allege and prove that he has been injured in a special manner different from the public generally.

4. ———: ———: INJUNCTION. Nevertheless a party may have an incorporeal interest in a street such as will enable him to enjoin a diversion of it to objects and uses inconsistent with the purposes to which it was granted to the city.

5. **Railroads:** RIGHT OF WAY IN CITIES. Prior to the Code of 1873, railroad companies had the right to construct their roads, subject to equitable control, upon the streets of cities and incorporated towns, without their consent and without compensation therefor. Following *The City of Clinton v. Cedar Rapids & M. R. R. R. Co.*, 24 Iowa, 455, and *The C. N. & S. W. R. R. Co.* 36 *Iowa*, 299.

6. ———: ———. Although a railroad were built upon the street of a city in pursuance of a city ordinance, yet the repeal of the ordinance would not render the railroad a nuisance.

7. ———: ———: STREET RAILWAY. An incorporated street or horse railway has the same rights under the general statute.

8. ———: ———. By voluntary agreement the city might grant the same rights to occupy streets and public grounds as a railroad company could acquire under the general right of way act.

9. **Practice:** UNDER THE CODE. The provisions of the Code, with reference to the rights of a railroad company over the streets of cities and incorporated towns, do not apply to actions commenced prior to the time when it took effect.

*Appeal from Dubuque District Court.*

FRIDAY, JUNE 19.

IN October, 1872, the plaintiffs filed their petition containing two counts, as follows:

"*First count* avers that the town, now city of Dubuque, was, by the proper authorities of the United States, laid off on the west bank of the slough of the Mississippi river, under the Act of Congress passed July 2d, 1836, and the Act amendatory thereto passed March 3d, 1837, into lots, streets and public squares, with a quantity of land one hundred feet wide, on the bank of said slough, and between said town and said slough, set apart and dedicated a public highway for public use, as in said act provided, the same to remain forever a public highway for the public use. That said slough on which said highway was so laid off, was navigable for all boats and water crafts navigating said river from First to Seventh streets in said Dubuque, from the time of the laying out of said town until obstructed by defendants and others, and that said highway continued to be used as such until obstructed by defendants, as hereinafter set out. That said town was duly platted

by the U. S. Government, and the several lots fronting on said highway, including lot No. 404, of the original town of Dubuque, of which plaintiffs are now the owners and in possession, were sold by the United States. That said lot 404 fronts on said highway, and is bounded on the north by Seventh street and on the south by Sixth street, as shown by the plat of said city. · That plaintiffs and their grantors have used and enjoyed said lot, and used and enjoyed said highway and said lot, ever since the laying out of the same, until defendants obstructed and appropriated said highway, as hereinafter set forth; and that plaintiffs were in possession of said lot as owners at the time of said obstruction, and had been for a long time before. That in the spring and summer of 1871, defendants, without the consent of plaintiffs, and against their objection, and without proceeding to condemn, and without the authority of anybody, and without having paid or tendered plaintiffs damages, and in violation of law, entered upon and took possession of said highway in front of said lot 404, and built an embankment the whole length and width of the same, opposite said lot, and laid thereon four or more railroad tracks, and have appropriated the whole of the same to their own use; and have permanently impaired and destroyed its usefulness as a highway, to the damage of plaintiffs of $10,000, which they have failed to tender or pay."

No question arises on the second count.

To which the defendants answered, setting up the following defenses:

1st. · General denial.

2d. Avers the reservation by Act of Congress, passed July 2d, 1836, and March 3d, 1837, in the original laying out of Dubuque, of a strip of land extending along the inner slough as far north as Seventh street, " for a public highway, and for other public uses." That by the several acts of the Legislature of Iowa, the corporate limits of the town and city of Dubuque were so extended as to include within the corporate limits all the islands, sloughs, inner channels, low lands, and water courses lying in front of said strip so reserved as aforesaid.

That under the Act of Congress approved March 3d, 1847, the city of Dubuque was authorized to, and did, enter the islands in the Mississippi river opposite the original town site, and obtained a patent therefor from the United States Government. That by Act of Congress approved February 14th, 1853, the U. S. relinquished to the city of Dubuque the slip of land reserved as aforesaid, and caused a patent to be issued therefor to said city. That, by the provisions of the Act of the Legislature incorporating the city of Dubuque, the city has power, through its council, to establish and change the channel of water courses, and to wall them up and cover them over.

That the defendant is a corporation engaged in the construction of a railroad from the city of Dubuque, northwardly along the bank of the Mississippi river into the State of Minnesota.

" That the inner channel or slough lying adjacent to said reserved slip, becoming gradually filled up and unfit for purposes of navigation, the city of Dubuque, on or about the year 1856, authorized the same to be filled up, and streets to be constructed across the same, for the purpose of enabling the public to reach the navigable channel of the river, and did sell and convey to the Dubuque Harbor Improvement Company, and the Dubuque Central Improvement Company, all the islands and lowlands lying in front of said lot 404, claimed by plaintiffs, and did authorize said company to fill up said low lands and sloughs, and to construct streets across the same.

" That said companies did construct streets across the same, and fill up portions thereof, and did cause said premises to be platted and laid out into streets and lots, all of which was well known to plaintiffs when they purchased lot 404. That long previous to the purchase of said lot by plaintiffs, the said inner channel had ceased to be a navigable channel, and for more than ten years previous to the acts done by defendants, of which plaintiffs complain, the said slough or channel had been closed and ordered to be filled up by the authority of the city of Dubuque.

" That defendant, by authority and permission of the city of Dubuque, and of the owners of the premises, has constructed its road-bed over and along the said reserved slip, and upon a portion of the premises lying next east thereto; no part of said road-bed being upon any part of the property of plaintiffs."

There was a jury trial resulting in a verdict and judgment for plaintiffs. Defendant appeals.

*S. P. Adams*, and *Shiras, Vanduzee & Henderson*, for appellant.

*D. E. Lyon* and *Griffith & Knight*, for appellees.

MILLER, CH. J.—I. On the trial of the cause the court, at the request of plaintiffs, gave to the jury the following instruction:

"The defendant had no right to lay down its track on Front street in front of plaintiffs' lot, on a different line, or in a greater number than was authorized by the ordinances of the city. If you find from the evidence that the defendant has laid down more tracks, and on a different line than was authorized by the ordinance which thereby unnecessarily and unreasonably interfere with the use of said street by the plaintiffs, as a public street, your verdict should be for the plaintiffs on the first count for the damages to them thereby."

The giving of this instruction is assigned as error. It is erroneous in several respects, even under the theory of plaintiffs' counsel, that the defendant could acquire a right to lay down its track or tracks only by permission of the city council of Dubuque, through the passage of a city ordinance.

The defendant gave in evidence a city ordinance adopted June 10, 1864, granting to the Dubuque Lumbermen and Manufacturers' Railroad Company the right to construct and maintain a railroad track upon the street in front of plaintiffs' premises, which was to be open to every other person or corporation to pass over with railroad cars. The evidence tends to show that this track had been constructed, and was

being used by the defendant, and was one of the tracks complained of by plaintiffs.

The defendant also gave in evidence an ordinance adopted October 31st, 1870, granting the right of way to the Dubuque & Minnesota Railroad Company (now the Chicago, Dubuque & Minnesota Railroad Company,) to lay down a single railway track upon a designated line, and in front of plaintiffs' premises; also an ordinance granting to the Dubuque, Bellevue & Mississippi Railroad Company, (now the Clinton & Dubuque Railroad Company,) and to the Dubuque & Minnesota Railroad Company, the right of way through the City of Dubuque, on a certain specified line; also, a further ordinance granting the right of way to the Iowa & Pacific Railroad Company to lay down a single track upon a specified line. There was evidence tending to show that the defendant, by arrangements with these other companies, had constructed an embankment between plaintiff's premises and the river, partly upon what is called the reserved strip known as Front street, and partly in a slough of the river, sufficient to accommodate all these tracks authorized by these several ordinances, and had laid down three tracks in addition to the Lumbermen's track. It was claimed by defendant on the trial, that one of the tracks thus constructed, was not situated upon the street, but upon that part of the slough which it had filled up.

Under this evidence it was the duty of the court to have instructed the jury as to the number of tracks, authorized to

1. PRACTICE: instructions.  be laid down under the several ordinances of the city, and he should not have left it to the jury to determine whether the defendant had constructed more tracks than the city ordinances authorized. This was a mixed question of law and fact. The number of tracks, authorized by the ordinances to be laid down, was a question of law which the court should have decided, and instructed the jury upon, instead of leaving it to the jury to decide as is done by the instruction complained of.

II. Again, the jury are told that if defendant has laid down more tracks than were authorized, or laid them on a

2. ——: ——: different line from those authorized, *"which thereby*

*unnecessarily and unreasonably interferes with the use of said street,"* they should find for the plaintiff. In addition to the error before pointed out, the instruction contains two others. *First.* There was no attempt to prove by any evidence whatever, that the railroad company had laid down more tracks than were reasonably necessary for its business, as contemplated in the ordinances, nor is there anything in the testimony tending in that direction. It was not claimed on the trial that such was the fact. *Second.* It does not follow that defendant would be liable to plaintiffs for damages, even if it had been proved that defendant had laid down tracks on different lines from those authorized by the ordinances, or more tracks than were thus authorized, which *unnecessarily* and *unreasonably* interfered with the use of the street, for no right of action would accrue to plaintiffs unless they have been injured in some special manner different from the public generally. An unlawful obstruction of a public highway is a public nuisance, not generally actionable, and a private person has a right of action only when he suffers an injury distinct from the public, as a consequence of the wrongful act. *Ewell v. Greenwood*, 26 Iowa, 377, and cases cited; *Hougham v. Harvey*, 33 Id., 203; *William's Case*, 5 Cocke's Rep., 72. See cases cited in notes on page 29 Sedgwick on Damages, 5th Ed.; *Iverson v. Moore*, 1 Salk., 15.

Although plaintiffs, as owners of a lot abutting on a public street may have such an incorporeal interest or right in the street as will enable them to enjoin a diversion of it to uses and purposes foreign to and inconsistent with the objects for which the street was granted to the city, (*Cook v. City of Burlington, supra*,) yet it does not follow, that, therefore, they may maintain an action for damages for an obstruction which does not affect them differently from the public generally.

III. We have thus far examined the instruction complained of, on the theory that the defendant could only acquire a right-of-way for its railroad track over, and upon the public streets of the city of Dubuque, under the

ordinances passed by the City Council. It was held by this court in *The City of Clinton v. Cedar Rapids & M. R. R. Co.*, 24 Iowa, 455, that the legislature has authorized railroad companies to construct their roads over, and upon the streets of cities and towns in the State, without the consent of the city or town, and without compensation being made therefor, subject however, to proper equitable control. The same doctrine is again distinctly held in *The C. N. & S. W. R. Co. v. The Mayor, etc., of Newton*, 36 Iowa, 299; so in *City of Clinton v. The Clinton & Lyons Horse R'y Co.*, Sept. Term 1873, it was held that the general statutes in respect to the right-of-way for railroads apply to an incorporated street or horse railway, and although it was built in pursuance of a city ordinance, a repeal of the ordinance does not render the railroad a nuisance, that it is authorized to maintain and operate its road under the general right-of-way act, subject to proper police regulations and equitable control. The same doctrine is again recognized and sanctioned in *Cook et al. v. The City of Burlington*, 36 Iowa, 357, where it is held that the city may by voluntary agreement convey to a railroad company the same rights to occupy the streets, and public grounds in the city for railroad purposes, as the company might acquire under the general right-of-way act.

It is thus apparent that the theory of the instruction is in conflict with these cases, and, for this reason also erroneous. Without discussing other questions made and presented by appellants, we conclude that the judgment must be reversed.

It is proper to remark that now by section 464 of the Code of 1873, authority is conferred upon cities and towns incorporated under the general incorporation laws to "authorize or forbid the location and laying down of tracks for railways," etc. This enactment, however, in no manner effects this case which was commenced prior to the taking effect of the Code, and the city of Dubuque is not organized under the general incorporation law.

REVERSED.